UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **DARRYL WILCOX,**<br><br>       Plaintiff,<br>vs.<br><br>**HEARN INDUSTRIAL SERVICES INC.,**<br><br>       Defendant. | **2:24-CV-10229-TGB-CI**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING HEARN INDUSTRIAL SERVICES INC.'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 19);**<br><br>**DENYING DARRYL WILCOX'S MOTION TO FACILITATE NOTICE OF SUIT TO OTHER SIMILARLY SITUATED INDIVIDUALS (ECF NO. 18);**<br><br>**DENYING HEARN INDUSTRIAL SERVICES INC.'S MOTION FOR LEAVE TO FILE SURREPLY (ECF NO. 23)**<br><br>**AND DENYING WILCOX'S MOTION FOR EQUITABLE TOLLING (ECF NO. 26)** |

Darryl Wilcox ("Plaintiff") brings this lawsuit claiming that his former employer, Hearn Industrial Services Inc. ("Defendant") failed to

pay Plaintiff and other similarly situated individuals overtime wages to which they were entitled under the Fair Labor Standards Act of 1938 ("FLSA"). ECF No. 9. Defendant moves for summary judgment and the dismissal of Plaintiff's claims. ECF No. 19. Plaintiff moves to facilitate notice of this suit to other similarly situated individuals, ECF No. 18, and for "equitable tolling of the statute of limitations as it applies to putative opt-in collective members," ECF No. 26, PageID.1454, and Defendant moves to file a surreply to Plaintiff's Motion, ECF No. 23.

After careful review of the record and caselaw, Defendant's Motion for Summary Judgment will be **GRANTED**, and the three remaining motions will be **DENIED** as moot.

## I. BACKGROUND

Plaintiff worked for Defendant from June 18, 2022 until October 18, 2023 in various roles. ECF No. 9, PageID.53. As part of his job requirements, Plaintiff was required to attend daily meetings which began at the start of his shift, at 6:00 p.m. ECF No. 19-4, PageID.675–76; ECF No. 22, PageID.1387–88. While the meeting would start at 6:00 p.m., Plaintiff testifies that he would punch in [at] 5:45 p.m. to 'make it to the meeting,' but [that] his punch time 'would be adjusted to 6:00 p.m.'" by an automatic time rounding policy that Defendant had. ECF No. 22, PageID.1388. Plaintiff testified that under Defendant's time rounding policy, Defendant would round the employee's start time to the closest quarter of an hour, depending on what time they clocked in. ECF No. 19,

PageID.527; ECF No. 19-4, PageID.683. Specifically, Plaintiff testified that the time would either "roll[] forward" or "roll[] back", depending on the time he "punched in." ECF No. 19-4, PageID.684.

Plaintiff asserts that, as a result of Defendant's policy, he and similarly situated employees "were required to perform at least 15 minutes of unpaid compensable work to prepare for their shifts." ECF No. 9, PageID.51. Defendant produced records of Plaintiff's time logs. ECF No. 21-1, PageID.1356. Plaintiff asserts that those records were subject to supervisor to modification. ECF No. 21, PageID.1348.

Plaintiff also claims that he is entitled to unpaid overtime which resulted from the following policy:

> Defendant has a standard practice of deducting 30 minutes from employee time sheets each workday for lunch, totaling two hours over the Defendant's standard 5-day workweek. … Plaintiffs and other similarly situated employees were expected to work through their unpaid lunch periods. … Plaintiffs were eligible for overtime pay.

ECF No. 9, PageID.51–52 (internal formatting omitted).

However, Defendant points to its practice of providing "exception logs" in which employees could request adjustments to the time that they were paid for a given day. And Plaintiff used the exception logs:

> Q: Did you ever record the postings [of hours worked the previous day]?
> A: Some, yes.
> …

3

> Q: Do you -- why would you do that?
>
> A: If the hours wasn't correct for the hours I worked the day before.
>
> Q: How often do you think you did that, took a picture and sent it to your supervisor?
>
> A: More than 25, no more than 50.
>
> **Q: Okay. And the purpose of this was so that they would correct your time?**
>
> **A: Yes.**
>
> **Q: And did your time get corrected?**
>
> **A: Yes.**
>
> Q: And did you also have to fill out something called an exception log?
>
> A: Later on in the employment year, yes.

ECF No. 19-4, PageID.677–78 (emphasis added).

Defendant submitted records which showed that its other employees used the exception logs. ECF No. 19-12, PageID.830; ECF No. 19-13, PageID.836. Defendant's records, in fact, show that its employees would use the exception logs to seek additional payment when they did not take lunch on a given day. ECF No. 19-19, PageID.911, PageID.914–15, PageID.919, PageID.921–22, PageID.925. Plaintiff responds that he told supervisors that he didn't get to take his lunch "[p]robably over a hundred times," but did not receive payment for them. ECF No. 18-2, PageID.188. He also asserts that several months after he left his job with Defendant, that Defendant removed the exception logs. ECF No. 22, PageID.1397–98 (*citing* ECF No. 18-6, PageID.430).

Plaintiff originally filed suit on January 29, 2024, along with two other individuals, Kyle Benson and Edwin Sanchez. ECF No. 1, PageID.2. Benson and Sanchez are no longer participating in the lawsuit, leaving Plaintiff as the sole representative for the claims. ECF No. 9; ECF No. 13. On January 17, 2025, following discovery, Defendant filed the instant Motion for Summary Judgment, arguing that Plaintiff cannot recover unpaid overtime for the shift meetings because they occurred during his workday, not before, and that Plaintiff cannot recover for unpaid lunch because he failed to request payment for lunch under their established exception sheet process. ECF No. 19.

## II. STANDARD

"The FLSA requires an employer to pay its employees overtime wages at a rate of not less than one-and-a-half times the regular rate of pay for every hour that employees work over 40 hours per week." *Viet v. Le*, 951 F.3d 818, 822 (6th Cir. 2020). An employee who claims that he was not paid this overtime rate "has the burden of proving that he performed work for which he was not properly compensated." *Id.* at 822 (*quoting Anderson v. Mt. Clements Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*).

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact such that the movant is entitled to a judgment as a matter of law."

5

*Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013); see also Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under governing law. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On a motion for summary judgment, the Court must view the evidence, and any reasonable inferences drawn from the evidence, in the light most favorable to the non-moving party. See *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Eward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Instead, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of

law. *See Anderson,* 477 U.S. at 252. For the Court to grant summary judgment, the evidence cannot be such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

### III. ANALYSIS

For the reasons that follow, Defendant's Motion for Summary Judgment will be **GRANTED**.

**1. Defendant is Entitled to Summary Judgment on Plaintiff's Time Rounding Claim**

In the Amended Complaint, Plaintiff asserted that he and other similarly situated employees "were required to arrive at the facility no later than 5:45 p.m. each workday, but not allowed to clock in until their official start time, thereby depriving them of compensable work time." ECF No. 9, PageID.51. Plaintiff "and other similarly situated employees were required to perform at least 15 minutes of unpaid compensable work to prepare for their shifts." *Id.*

These allegations rest on two factual premises: first, Defendant has a rounding policy for their tracking of employee time. That policy was that Defendant would round the employee's start time to the closest quarter of an hour, depending on what time they clocked in. ECF No. 19, PageID.527; ECF No. 22, PageID.1387–88. Second, at the plant at which Plaintiff worked, Defendant started each day with a staff meeting. ECF No. 19, PageID.524; ECF No. 22, PageID.1387. That meeting would begin

at the start of Plaintiff's shift, at 6:00 p.m. ECF No. 19-4, PageID.675–76; ECF No. 19-11, PageID.806; ECF No. 22, PageID.1387–88.

Plaintiff argues that Defendant's rounding policy caused him to be consistently undercompensated for his time: he testifies that he "would punch in [at] 5:45 p.m. to 'make it to the meeting,' but his punch time 'would be adjusted to 6:00 p.m.'" by the automatic rounding policy. ECF No. 22, PageID.1388. He also states that before pre-shift meetings, he would "perform other tasks as needed, including forklift cleaning or maintenance." *Id.* PageID.1387. In support of this factual allegation, Plaintiff cites to an exhibit containing his own deposition. *See id.* at PageID.1387 (*citing* ECF No. 18-2, PageID.248). The cited portion of Plaintiff's deposition, however, does not contain any mention of any work performed before the pre-shift meetings. Instead, the record reflects that Plaintiff's work began with the pre-shift meeting, which began at 6:00 p.m. *See* ECF No. 19-4, PageID.675–76; ECF No. 19-11, PageID.806; ECF No. 22, PageID.1387–88

Second, Defendant's rounding system was lawful. Pursuant to regulation, *see* 29 C.F.R. § 785.48(b), courts find that time clock rounding policies which round clock-in times to certain increments are permissible if they are applied in a manner that, on average, favors neither overpayment or underpayment. *See Corbin v. Time Warner Ent.-Advance/Newhouse P'ship*, 821 F.3d 1069, 1075–76 (9th Cir. 2016). Defendant submits Plaintiff's deposition testimony that under

Defendant's time rounding policy, "the time rolls back to 15 minutes quarterly, I believe, and rolls forward, it depends on what time you clock in." ECF No. 19-4, PageID.683. This policy is therefore applied neutrally, favoring neither overpayment or underpayment: if Plaintiff clocked in closer to 5:45 p.m. than 6:00 p.m., his time would begin at 5:45 p.m., while if he clocked in closer to 6:00 p.m., his time would start then. This is reflected in the record the Court has of Plaintiff's work start times. ECF No. 21-1, PageID.1356.

Plaintiff responds by stating that Defendant has not met their burden to show that their rounding policy is neutral. ECF No. 22, PageID.1395–96 (*citing Kurpan v. CNC Precision Mach., Inc.*, No. 23-00070, 2024 WL 3992299, at *4 (N.D. Ohio Aug. 29, 2024)). The Court disagrees: Defendant has presented Plaintiff's own testimony that Defendant's rounding policy works neutrally. *See* ECF No. 19-4, PageID.683, PageID.684. Nor has Plaintiff presented any evidence that the rounding policy was applied unevenly in any way.[1] Accordingly, the Court finds that there is no genuine issue of material fact as to whether the rounding policy is neutral.

---

[1] Plaintiff raises the fact that the "time clock records" were "subject to supervisor modification." ECF No. 21, PageID.1348. However, Plaintiff does not allege that the time records were actually modified to the detriment of employees. Thus, the fact that the records were "subject to … modification" does not affect whether the Defendant's rounding policy operated neutrally.

Third, and finally, Plaintiff suggests in part that he was disfavored by the rounding policy because of when he had to clock in. Plaintiff testifies that he "punched in [at] 5:44 or 5:45 **to make it to the meeting** … but my time … would be adjusted to 6:00." ECF No. 19-4, PageID.682 (emphasis added). Plaintiff appears to claim that he was consistently underpaid because he had to clock in *before* 6:00 p.m. in order to be present with everyone else at 6:00 p.m. However, if so, that time spent traveling from the time clock to the shift meeting beginning at 6:00 p.m. would be non-compensable under the Portal-to-Portal Act, 29 U.S.C. § 254(a)(2). That statute amended FLSA to exclude from coverage activities "preliminary to … [an employee's] principal activity or activities." *Id.* It also excluded "walking … or traveling to and from the actual place of performance of the principal activity … which such employee is employed to perform." The Portal-to-Portal Act was specifically enacted in order to overturn a Supreme Court decision which held that time spent walking from an employee's time clock to their work station was compensable. *See Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904, 911 n.2 (6th Cir. 2002); *see also Wilson v. Peckham, Inc.*, No. 20-565, 2021 WL 3168616, at *3 (W.D. Mich. July 26, 2021).

Therefore, even if Plaintiff did have to clock in slightly before 6:00 p.m. in order to make it to his 6:00 p.m. start-of-shift meeting, the time immediately before 6:00 p.m. would either be activity "preliminary to" Plaintiff's principal activities or time spent walking to his actual place

10

of performance. Therefore, such time would be non-compensable under FLSA, and Plaintiff would not be entitled to overtime pay for it.

For those reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's FLSA claim related to the start-of-shift meetings: The meetings occurred *during*, not before, Plaintiff's shift; Plaintiff's clock-in times were governed by a permissibly neutral rounding policy. Additionally, even if, in order to make it to the start-of-shift meeting, Plaintiff had to consistently clock in before 6:00 p.m., which would be rounded up to 6:00 p.m., this time would be a preliminary activity, not compensable under the FLSA.

### 2. Defendant is Entitled to Summary Judgment on Plaintiff's Automatic Lunch Deduction Claim

Plaintiff's second claim arises from Defendant's lunch break policy.

> Defendant has a standard practice of deducting 30 minutes from employee time sheets each workday for lunch, totaling two hours over the Defendant's standard 5-day workweek. … Plaintiffs and other similarly situated employees were expected to work through their unpaid lunch periods. … Plaintiffs were eligible for overtime pay.

ECF No. 9, PageID.51–52 (internal formatting omitted).

Automatic time deduction for lunch breaks are lawful under the FLSA. *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 873 (6th Cir. 2012). And "[u]nder the FLSA, if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow

11

the established process." *Id.* at 876 (applying that standard to claims of unpaid overtime for automatic time deduction for lunch breaks). The question is whether the employee can show that "the employer knew or should have known that [the employee] was working overtime … [because an] employer cannot satisfy an obligation that it has no reason to think exists." *Id.* at 876 (*quoting Wood v. Mid-America Mgmt. Corp.*, 192 Fed. App'x 378, 389 (6th Cir. 2006)).

Here, Defendant had established a reasonable process for employees to report uncompensated work time: the "exception logs" in which employees would request adjustments to their time for a day. Plaintiff used the exception logs:

> Q: Did you ever record the postings [of hours worked the previous day]?
>
> A: Some, yes.
>
> …
>
> Q: Do you -- why would you do that?
>
> A: If the hours wasn't correct for the hours I worked the day before.
>
> Q: How often do you think you did that, took a picture and sent it to your supervisor?
>
> A: More than 25, no more than 50.
>
> **Q: Okay. And the purpose of this was so that they would correct your time?**
>
> **A: Yes.**
>
> **Q: And did your time get corrected?**
>
> **A: Yes.**

> Q: And did you also have to fill out something called an exception log?
>
> A: Later on in the employment year, yes.

ECF No. 19-4, PageID.677–78 (emphasis added).

Defendant's Director of Operations, Stephen Salna, was aware of the exception log. ECF No. 19-3, PageID.580, PageID.599–600. Additionally, other employees of Defendant were aware of the exception log. *See* ECF No. 19-12, PageID.830 ("If for some reason I need to correct one of my time clock punches, there is an exception log hanging right next to the time clock where I could record the correct time I began and/or stopped working."); ECF No. 19-13, PageID.836. And, significantly, Defendant has submitted examples of the exception logs themselves, in which employees requested time corrections for "no lunch." ECF No. 19-19, PageID.911, PageID.914–15, PageID.919, PageID.921–22, PageID.925.

The evidence before the Court shows that Defendant had a reasonable process for employees to report and correct uncompensated work time: Plaintiff knew about and used the exception logs, and had his time corrected when he did. Other employees also used the exception logs, including to request payment on days where they worked through their automatically deducted lunch time. But Plaintiff failed to use this established process to request his time back for the deducted lunch periods that he worked. He did not use the exception log process for this purpose though he was aware of it and had used it to correct other errors

13

more than 25 times. Under these circumstances, no reasonable jury could find that Plaintiff's employer, Defendant, knew or should have known that Plaintiff was working overtime. There was a process for being compensated for the deducted lunch periods that employees worked through, but in Plaintiff's case he did not utilize it.

Plaintiff responds to Defendant's arguments about the exception log. Plaintiff argues that Defendant actually took down their exception log from next to the time clock. ECF No. 22, PageID.1397–98 (*citing* ECF No. 18-6, PageID.430. This testimony reflects that the payroll exemption log was taken down about four months before November 4, 2024 (approximately July 2024). ECF No. 18-6, PageID.428. But Plaintiff worked for Defendant before that, between June 18, 2022, and October 18, 2023. ECF No. 9, PageID.53. Accordingly, he did not work for Defendant during the time when the exception log was taken down. The fact that the log was taken down in approximately July 2024 cannot answer the question of whether Plaintiff performed uncompensated overtime for Defendant in 2022 and 2023. And Plaintiff reports using the exception log more than 25 times while he worked for Defendant. ECF No. 19-4, PageID.677–78.

Plaintiff testifies that he told supervisors that he didn't get to take his lunch "[p]robably over a hundred times." ECF No. 18-2, PageID.188. But that does not explain why he did not report that using the exception logs which he admitted using when he needed to correct his time.

14

Plaintiff also argues that the exception logs should not be considered a reasonable policy to report uncompensated work time because there was no written policy or training for using exception logs to report lunches not taken. ECF No. 22, PageID.1398–99. In support, Plaintiff cites to *Parker v. Breck's Ridge, LLC*, No. 2:17-CV-633, 2019 WL 4743750 (S.D. Ohio Sept. 30, 2019), and *Roby v. Lincoln Elec. Co.*, No. 1:18 CV 0006, 2019 WL 932031 (N.D. Ohio Feb. 26, 2019). *See id.* Those cases, however, do not hold that a "reasonable process" for reporting uncompensated work time must be in writing, nor that there must be training specifically related to automatic lunches. For instance, while the court in *Parker* found that the nonexistence of a written policy helped the plaintiff survive summary judgment, 2019 WL 4743750 at *17, in that case the defendant had a practice in which an employee's timecard would indicate "NL" for "no lunch," time for which the employee would then be paid. *Id.* at *3-4. However, the plaintiff in *Parker* had actually marked his time card as "NL" and was still *not paid*. *Id.* at *3–4. By contrast, in this case Plaintiff *was* paid when he corrected his time using the exception log. ECF No. 19-4, PageID.677–78. Where Plaintiff was aware of and successfully used Defendant's process for correcting time in another context, but chose not to do so for the times when he worked through his lunch breaks, and where other employees did make that correction, there is no genuine material dispute of fact over whether

15

Defendant should have known that Plaintiff was performing uncompensated work.

### 3. Defendant is Entitled to Summary Judgment

For the reasons given, the Court finds that Defendant is entitled to summary judgment on Plaintiff's FLSA claim. Defendant's Motion, ECF No. 19, is **GRANTED**, and Plaintiff's lawsuit, with its individual and collective claims will be **DISMISSED WITH PREJUDICE**. *See In re Fam. Dollar FLSA Litig.*, 637 F.3d 508, 519 (4th Cir. 2011) ("Because we have affirmed summary judgment dismissing [plaintiff's FLSA] complaint on the merits, we need not address whether the district court properly refused to certify her action as a collective action. Without a viable claim, [plaintiff] cannot represent others whom she alleged were similarly situated."). Therefore, the Court **DENIES** Plaintiff's Motion for Notice to Facilitate Notice of Suit to Other Similarly Situated Individuals, ECF No. 18, Plaintiff's Motion for Equitable Tolling, ECF No. 26, and Defendant's Motion for Leave to File Surreply in Opposition to Plaintiff's Motion to Facilitate, ECF No. 23, as moot.

**SO ORDERED.**

Dated: September 8, 2025     /s/Terrence G. Berg
                             HON. TERRENCE G. BERG
                             UNITED STATES DISTRICT JUDGE